IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY,<br><br>   Plaintiff,<br><br>vs.<br><br>BRYAN BULLERDICK, individually and in his role as Trustee, ASHLEY BULLERDICK, THE BULLERDICK TRUST, by and through the Trustee,<br><br>   Defendants. | Case No. _____ |

## COMPLAINT

Plaintiff, Philadelphia Indemnity Insurance Company ("Philadelphia"), by and through its undersigned counsel, alleges the following for its Complaint against Defendants Bryan Bullerdick ("B. Bullerdick"), Ashley Bullerdick ("A. Bullerdick"), The Bullerdick Trust (the "Trust," and collectively with B. Bullerdick and A. Bullerdick, the "Indemnitors"):

### I. PARTIES

1. Philadelphia is a corporation formed under the laws of the State of Pennsylvania with its principal place of business located in Bala Cynwyd, Pennsylvania, which is the location from which Philadelphia's high level officers direct, control, and coordinate Philadelphia's corporate activities. Thus, Philadelphia is a citizen of the State of Pennsylvania for purposes of diversity jurisdiction. Philadelphia is also duly qualified and authorized to transact business within the State of North Carolina.

1

2. Upon information and belief, B. Bullerdick is a citizen of the State of North Carolina and can be served with process at 14034 Clarendon Point Court, Huntersville, North Carolina 28078.

3. Upon information and belief, A. Bullerdick is a citizen of the State of North Carolina and can be served with process at 14034 Clarendon Point Court, Huntersville, North Carolina 28078.

4. Upon information and belief, the Trust is a Florida trust created by B. Bullerdick. Upon information and belief, B. Bullerdick is the Trustee of the Trust and it is administered in and its assets are located in North Carolina by B. Bullerdick, as Trustee.

## II.    JURISDICTION AND VENUE

5. This Court possesses original jurisdiction over the claims asserted in Philadelphia's Complaint pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs, and the matter is a controversy between citizens of different states.

6. This Court possesses the authority to declare the respective rights and other legal relations of Philadelphia as requested herein pursuant to 28 U.S.C. § 2201(a).

7. This Court possesses the authority to award the injunctive relief requested herein pursuant to Rule 65 of the Federal Rules of Civil Procedure.

8. Venue is proper in the United States District Court for the Western District of North Carolina, Charlotte Division pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 113(c) because B. Bullerdick and A. Bullerdick and the Trustee reside in the Western District of North Carolina, Charlotte Division.

9. In addition, the Indemnitors agreed that jurisdiction and venue are proper in this Court pursuant to Paragraph 21 of the General Indemnity Agreement (the "Indemnity Agreement"), attached hereto as **Exhibit A**, that states, in relevant part:

> **JURISDICTION** – As to any legal action related to this Agreement, Principal, and Indemnitors consent to the jurisdiction of any court of competent jurisdiction, including jurisdiction of any state or federal court where the Surety, Principal, or one or more of any of the Indemnitors is domiciled or doing business, at the sole discretion of the Surety. Principal and Indemnitors waive any right to trial by a jury for any tort or contract claims related to this Agreement and waive any claim or defense in any such action based on alleged lack of personal jurisdiction, improper venue, forum non conveniens or any similar basis.

(Ex. A, ¶ 21).

10. The Indemnity Agreement defines "Indemnitors" to include B. Bullerdick, A. Bullerdick, and the Trust. It states:

> **Indemnitors**: Indemnitors include: (i) all Persons who sign this Agreement or whose authorized representatives sign this Agreement or any other agreement that incorporates by reference the terms of this Agreement, including, without limitation: (1) any Persons added to this Agreement via rider or amendment and (2) any Person who agrees to be bound by this Agreement in response to a request from any Indemnitor or Principal named herein; (ii) any present or future, direct or indirect, subsidiary, successor, affiliate, or parent of any Indemnitor or Principal; and (iii) and, as to all of the foregoing, whether they act alone or in joint venture with others, whether or not said others are named herein.

(Ex. A, ¶ 1(c)).
3

4873-3588-6082, v. 2   Case 3:23-cv-00244-KDB-SCR   Document 1   Filed 04/26/23   Page 3 of 19

## III. FACTUAL ALLEGATIONS

### The General Indemnity Agreement

11. Philadelphia is in the business of issuing surety bonds on behalf of various entities and individuals in the construction industry.

12. B GSE Group, LLC (the "Principal") is a company engaged in the business of manufacturing certain equipment for aircrafts located in, among other places, the State of North Carolina. The Principal petitioned for bankruptcy protection under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of North Carolina bearing Case No. 23-30013 (the "Bankruptcy").[1]

13. As a condition of and in consideration for Philadelphia's issuance of surety bonds on behalf of the Principal, B. Bullerdick, A. Bullerdick, and the Trust executed the Indemnity Agreement in favor of Philadelphia on or about March 30, 2021.

14. The Indemnity Agreement applies to:

> [A]ll Bonds executed by and/or procured by Surety for Principal, in its own name or as a joint venture with others. Principal and Indemnitors expressly waive any defense that may arise as a result of this Agreement having been executed subsequent to the date of the issuance of any Bond and Principal and Indemnitors admit and acknowledge that any such Bond was executed pursuant to a Principals' and Indemnitors' request and in reliance on the Principals' and Indemnitors' representation and promise to execute this Agreement.

(Ex. A, ¶ 19).

15. Pursuant to Paragraph 3 of the Indemnity Agreement, each of the Indemnitors, individually, jointly, and severally, agreed to indemnify and hold Philadelphia harmless from any loss sustained or incurred by reason of having executed or being requested to execute any and all Bonds:

---

[1] B GSE Group, LLC petitioned for protection under Chapter 11 of the Bankruptcy Code and, as such, nothing in this Complaint should be construed as a claim against B GSE Group, LLC.

> **INDEMNITY** – Principals and Indemnitors agree to indemnify and hold harmless Surety from and against any Liability & Loss sustained or incurred: (a) by reason of having executed or being requested to execute any and all Bonds; (b) by failure of Indemnitors or Principals to perform or comply with any of the covenants or conditions of this Agreement or any other agreement; and (c) in enforcing any of the covenants or conditions of this Agreement or any other agreement. The Principals' and Indemnitors' obligation to indemnify the Surety shall also apply to any Bond renewals, continuations or substitutes therefore and shall extend to any payments made by Surety under the Good Faith belief that (a) Surety was or might be liable therefore or (b) the payments were necessary or advisable to protect any of the Surety's rights or to avoid or lessen Surety's liability or alleged liability. In the event of payments by Surety, Principals and Indemnitors agree to accept vouchers, a sworn itemization, or other evidence of such payments as prima facie evidence of the fact and extent of the liability of Principals and Indemnitors to Surety in any demand, claim or suit by Surety against Principals and Indemnitors. Separate suits may be brought under this Agreement as causes of action accrue, and the pendency or termination of any such suit shall not bar any subsequent action by Surety. The Surety may, but shall not be obligated to, join any or all of the Principals or Indemnitors as parties to any action relating to any Bonds or this Agreement, and Surety shall have no obligation to exhaust any remedies against any person or entity prior to pursuing any such action against one or more Principals or Indemnitors. All Principals and Indemnitors waive and subordinate all rights of indemnity, subrogation, and contribution against each other until all obligations due to the Surety under this Agreement, at law, or at equity have been fully satisfied. The Surety shall be entitled to intervene in any action between one or more Principals or Indemnitors in order to enforce this provision.

(Ex. A, ¶ 3).

16. As an extension of the Indemnitors' duty to exonerate and indemnify Philadelphia, the Indemnitors are jointly and severally obligated to collateralize Philadelphia for and against any and all potential losses and/or expenses which Philadelphia might incur by reason of having executed or being requested to execute any and all Bonds:

> **POSTING OF COLLATERAL** – Principals and Indemnitors agree to deposit collateral immediately upon demand by Surety an amount equaling any and/or all of the following: (a) the face amount of any claim or demand that is asserted against Surety under any Bond(s) plus the Surety's estimate of the costs and expenses Surety may sustain and incur while paying, compromising, resisting, defending, trying or appealing the claim or demand (in Surety's sole discretion); (b) sums posted by Surety as a reserve for the payment of potential losses and/or expenses; (c) all costs and expenses incurred in connection with investigating, paying or litigating any claim, and/or enforcing this Agreement, including but not limited to legal fees and expenses, professional and consulting fees, technical and expert

5

witness fees and expenses; (d) all accrued and unpaid premiums owing to Surety for the issuance, continuation or renewal of any Bonds or for any policy of insurance issued by Surety for the Principal or Indemnitors; (e) funds loaned or advanced by Surety (at the Surety's sole discretion) to the Principal; and (f) all other amounts payable to Surety according to the terms and conditions of this Agreement or any other agreement between Surety and Principal or Indemnitors. Surety may, in its sole discretion, either retain or use any part or all of the collateral in settlement or payment of any claim made under any Bond(s), as collateral or reimbursement for any actual Liability and Loss already incurred, as reserve to cover the amount of any potential Liability and Loss, or for any other purpose related to any Liability and Loss for which the Indemnitors would be required to collateralize, exonerate, or indemnify Surety under the terms of this Agreement. The Principals and Indemnitors shall be obligated to deposit the amount of collateral demanded by Surety regardless of whether they dispute their liability for any Liability and Loss or potential Liability and Loss or assert any defenses to the validity or enforcement of this Agreement. In the event that Surety demands collateral from more than one Principal or Indemnitors, Surety shall be entitled, in its sole discretion, to apportion the amount of collateral required to be deposited by each Principal or Indemnitor. If Surety permits the Principals and Indemnitors to deposit less than the full amount of either (a) through (f) herein, Surety may, from time to time, require the Principals and Indemnitors to increase the amount of the collateral by any amount Surety deems appropriate, in its sole discretion, up to an amount equal to (a) through (f) herein. In the event that the Principal Indemnitors fail to deposit the amount of cash collateral required under this provision, Surety may, in its sole discretion, direct the Principals and Indemnitors to deposit alternate forms of collateral security acceptable to Surety. Principals and Indemnitors acknowledge that their duty to deposit collateral under this Paragraph is specifically enforceable because Surety lacks an adequate remedy at law and their failure to deposit collateral with Surety as required by this Paragraph will cause irreparable harm to as to justify injunctive relief compelling the deposit of collateral. Surety agrees to refund any unused portion of the deposit, without any interest or other damages for loss of use of such funds, upon the termination of all liability of Surety on all Bonds and the full performance of all of the Principals and Indemnitors of all obligations under this Agreement.

(Ex. A, ¶ 4).

17. Moreover, the Indemnity Agreement states:

**DISCHARGE OF SURETY** – Upon the request of the Surety, Principals and Indemnitors will procure the discharge of Surety from any Bond, and all liability arising there from, and provide evidence to Surety regarding same.

(Ex. A, ¶ 11).

18. Paragraph 5 of the Indemnity Agreement states:

**ASSIGNMENTS** - In the event of a Default, Principal and Indemnitors do hereby assign, transfer and set over to Surety, as of the date of execution of each Bond, all of their rights under all Bonded Contract(s) including: (a) their right, title and interest in all subcontracts, purchase orders, and any surety bonds supporting such agreements, let in connection therewith; (b) all machinery, plant, equipment, tools and materials which shall be upon the site of the work or elsewhere for use in connection with the Bonded Contract(s) including all materials ordered or fabricated for the Bonded Contract(s); (c) all claims and causes of action against any parties to the Bonded Contract(s) or against third parties arising from or relating to the Bonded Contract(s); (d) any and all sums due, or to become due under the Bonded Contract(s), including all monies earned or unearned which are unpaid at the time of notice from Surety to the Obligee regarding such sums; (e) all rights it has in patents, patented processes, licenses, designs, copyrights, trademarks and all other intellectual property rights required for the performance of the work for which Surety has issued bonds, and expressly authorize Surety to use these property rights as required in Surety's discretion to complete the Bonded Contract(s); and (f) any other rights to payment from any person or entity in relation to the Bonded Contracts, including but not limited to, any insurance proceeds or premium refunds, any tax or assessment refunds, or any rights to payment by virtue of participation in a partnership, joint venture, or the like. In the event that the Surety receives any monies in excess of the total amount of its Liability and Loss or potential Loss on any individual Bond or Bonded Contract, Surety shall be entitled to apply any such excess amounts toward the Surety's Liability and Loss or potential Liability and Loss on any other Bonds or Bonded Contracts until the Surety has been fully reimbursed and collateralized as provided by the terms of this Agreement. In the event of Default, Principal and Indemnitors further hereby agree to appoint and designate Surety and its authorized representatives as their respective Attorneys-in-Fact with power to (i) endorse and sign in the name of Principal or Indemnitor, as payee or otherwise, all documents and all checks, drafts, warrants or other instruments made or issued in connection with the Bonded Contract(s); and (ii) receive, collect and disburse the proceeds of all such checks, drafts or warrants; and (iii) direct the Obligee or project owner to deposit any further progress payments or other forms of payment in relation to a Bonded Contract to a specific bank account, or to make checks payable, jointly, to the Principal and the Surety or to the Principal and such laborers, materialmen, or others as may be indicated by the Surety; and (iv) execute any and all documents in connection with the Bonded Contract(s) consistent with the Surety's rights as assignee per the terms of this paragraph.

(Ex. A, ¶ 5).

19. Additionally, Paragraph 22 of the Indemnity Agreement provides:

**TRUST FUNDS** - Principals and Indemnitors agree and expressly declare that all funds due or to become due under any Bonded Contract are impressed with an express, constructive, and/or resulting trust, whether in the possession of Principals or another and whether designated trust funds or not, for the benefit and payment of all persons to whom Principals incur obligations in the performance of such contract for which Surety would be liable under any Bond, which express, constructive, and/or resulting trust also inures to Surety's benefit. This trust fund provision is enforceable under the law of any state in which (a) the Bonded Contract is being performed, (b) any Principal or Indemnitor is domiciled or doing business, or (3) sufficient minimum contacts exist with the Principal or Indemnitor so as to justify the exercise of personal jurisdiction over the Principal relative to the Bonded Contract. All funds due or to become due under any Bonded Contract, which constitute trust funds, shall be used for the sole purpose of performance or payment of obligations under the Bonded Contract for which Surety would be liable under its Bond(s), until that purpose has been fully satisfied. If Surety discharges any such obligation, it shall be entitled to assert the claim of such person to the trust funds, in addition to Surety's rights as trust beneficiary of the trust funds.

(Ex. A, ¶ 22).

20. Furthermore, in the event of Default, the Indemnity Agreement states:

Surety, in its sole discretion, shall have the right, but not the obligation, to: (i) take possession of the work under any and all Bonded Contracts, and complete or consent to the completion of such Bonded Contracts at the expense of the Indemnitors; (ii) take possession of Principals and Indemnitors' equipment, materials and supplies whether at the worksite or elsewhere reasonably necessary for the completion of the Bonded Contracts; (iii) file suit to enforce any or all provisions of this Agreement; or (iv) without limitation, Surety shall be entitled to take any other action as the Surety, in its sole discretion, deems necessary to fulfill its obligations under any Bond.

(Ex. A, ¶ 7).

21. The Indemnity Agreement defines "Default" as follows:

Any instance or condition where Principal or Indemnitors have or are alleged to have: (i) failed to pay any Bond premium charge when due; (ii) forfeited breached, abandoned, repudiated, or defaulted any Bonded Contracts; (iii) neglected or refused to pay for any indebtedness due in relation to any Bonded Contract, (iv) failed to honor any obligation under this Agreement; (v) become the subject of any voluntary or involuntary agreements or proceedings of liquidation, insolvency, bankruptcy, receivership, trusteeship, or be party to any assignment for the benefit of creditors; (vi) any proceeding instituted against any of them that may have the effect of depriving any of them of the use of any part of the materials or equipment

used in connection with the work under a Bonded Contract so as to hinder, delay or impede the normal and satisfactory progress of the work; (vii) with respect to any Indemnitors which are individuals, died, absconded, disappeared, become incompetent, are convicted of a felony or are imprisoned; (ix) violated any other written agreement with Surety, or (x) failed to procure the discharge of Surety from any Bond upon Surety's request.

22. Finally, by executing the Indemnity Agreement, the Indemnitors acknowledged "that [Philadelphia] relies upon the assets reflected in [the Principal and Indemnitors'] financial statements in the issuance of Bonds, and agree not to dispose of or transfer said assets, except in the ordinary course of business, without the prior, express, written consent of [Philadelphia]." (Ex. A, ¶ 16).

### The Bonds

23. On April 1, 2021 in reliance of the Indemnity Agreement and in relation to a project known as the China Lake South Airfield Projects (the "China Lake Project"), Philadelphia issued Performance Bond and Payment Bond, each bearing No. PB02152800126 (the "China Lake Bonds"), on behalf of the Principal with a penal sum in the amount of $3,312,959.12 each in favor of ACCO Engineered Systems, Inc. as obligee.

24. On April 1, 2021 in reliance of the Indemnity Agreement and in relation to a project known as DFW701RA DFW Terminal A & C PCA Replacement (the "DFW Project"), Philadelphia issued Performance Bond and Payment Bond, each bearing No. PB02152800127 (the "DFW Bonds"), on behalf of the Principal with a penal sum in the amount of $3,210,807.00 each in favor of American Airlines as obligee.

25. On May 14, 2021 in reliance of the Indemnity Agreement and in relation to a project known as JFK901RA JFK – Terminal 8 Supply 40 and 120 Ton PCA Units at JFK Terminal 8 (the "JFK Project"), Philadelphia issued Performance Bond and Payment Bond, each bearing No.

PB02153800131 (the "JFK Bonds"), on behalf of the Principal with a penal sum in the amount of $1,101,388.00 each in favor of American Airlines as obligee.

26. On October 13, 2021, in reliance of the Indemnity Agreement and in relation to a project known as the (NAWS) China Lake S Airfield project (the "NAWS Project"), Philadelphia issued Performance Bond and Payment Bond, each bearing No. PB02152800145 (the "NAWS Bonds"), on behalf of the Principal with a penal sum in the amount of $68,907.00 each in favor of Bergelectric Corp. ("Bergelectric") as obligee.

27. The foregoing bonds identified in Paragraphs 24 through 27 are collectively referred to herein as the "Bonds".

28. The foregoing projects identified in Paragraphs 24 through 27 are collectively referred to herein as the "Bonded Contracts".

## Breach of the Indemnity Agreement

29. Pursuant to the Indemnity Agreement, upon Philadelphia's demand, the Indemnitors agreed to:

> deposit collateral immediately upon demand by Surety an amount equaling any and/or all of the following: (a) the face amount of any claim or demand that is asserted against Surety under any Bond(s) plus the Surety's estimate of the costs and expenses Surety may sustain and incur while paying, compromising, resisting, defending, trying or appealing the claim or demand (in Surety's sole discretion); (b) sums posted by Surety as a reserve for the payment of potential losses and/or expenses; (c) all costs and expenses incurred in connection with investigating, paying or litigating any claim, and/or enforcing this Agreement, including but not limited to legal fees and expenses, professional and consulting fees, technical and expert witness fees and expenses; (d) all accrued and unpaid premiums owing to Surety for the issuance, continuation or renewal of any Bonds or for any policy of insurance issued by Surety for the Principal or Indemnitors; (e) funds loaned or advanced by Surety (at the Surety's sole discretion) to the Principal; and (f) all other amounts payable to Surety according to the terms and conditions of this Agreement or any other agreement between Surety and Principal or Indemnitors.

30. Moreover, the Indemnitor agreed to procure the full and complete discharge of Philadelphia from the Bonds, and all liability arising there from, and provide evidence to Philadelphia regarding same.

31. On January 6, 2023, the Principal filed its petition in the Bankruptcy.

32. Bergelectric, the obligee on the NAWS Bonds, notified Philadelphia of the Bankruptcy and its concern about the impact the Bankruptcy would have on the Principal's ability to complete the subject bonded contract. Additionally, Bergelectric forwarded a demand from Byzfunder NY LLC purporting to make demand for payments that were or may become due to BGSE.

33. After learning of the Bankruptcy and pursuant to its rights under the Indemnity Agreement, Philadelphia made demand upon the Indemnitors, jointly and severally, in a letter dated February 17, 2023 to (i) make arrangements to indemnify Philadelphia on a monthly basis as Philadelphia incurs losses and expenses; (ii) immediately obtain the full and complete discharge of Philadelphia from any and all Bonds currently in force issued by Philadelphia on behalf of Principal; or (iii) place Philadelphia in immediately available funds in the amount of $137,814, representing the face amount of the NAWS Bonds. This correspondence is attached hereto as **Exhibit B**.

34. In addition, it appears that the Principal will not continue to operate the business in light of the Bankruptcy.

35. At least one of the Bonded Projects, the China Lakes Project, is not expected to be completed for more than a year.

36. Philadelphia faces imminent and significant exposure if the Principal is unable to complete one or more of the Bonded Projects. Philadelphia's total maximum exposure under the Performance Bonds exceeds $7,694,061.12.

37. As of the date of this Complaint, Philadelphia has established a reserve for payment of losses and expenses in the amount of $1,700,000.

38. On April 5, 2023, Philadelphia made demand upon the Indemnitors, jointly and severally to (i) immediately obtain the full and complete discharge of Philadelphia from any and all Bonds currently in force issued by Philadelphia on behalf of the Principal or (ii) place Philadelphia in immediately available funds in the amount of $1,700,000 equal to the reserve by Surety for potential losses or expenses. This correspondence is attached hereto as **Exhibit C**.

39. To date, the Indemnitors have not honored their obligations under the Indemnity Agreement to either (i) make arrangements to indemnify Philadelphia on a monthly basis as Philadelphia incurs losses and expenses; (ii) immediately obtain the full and complete discharge of Philadelphia from any and all Bonds currently in force issued by Philadelphia on behalf of Principal; or (iii) place Philadelphia in funds.

40. Accordingly, the Indemnitors are in default under the Indemnity Agreement.

## The Trust

41. Upon information and belief, B. Bullerdick established the Trust for the benefit of himself and his issue. A copy of the trust instrument is attached hereto as **Exhibit D**.

42. Pursuant to Article I of the Trust, B. Bullerdick, as Trustee, "shall hold, manage, invest, and reinvest the Trust property (or the "Trust Estate") and shall collect and receive the interest, income and profits therefrom for the benefit of Bryan M. Bullerdick and his issue…"

43. Upon information and belief, B. Bullerdick deposited the Trust Estate into a certain account with Truist Bank.

44. Thus, Philadelphia now brings this action to enforce its rights under the Indemnity Agreement and to otherwise protect Philadelphia from loss.

## IV. CLAIMS FOR RELIEF

### COUNT I – BREACH OF THE INDEMNITY AGREEMENT

45. Philadelphia hereby restates the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

46. Pursuant to the terms of the Indemnity Agreement, the Indemnitors are jointly and severally obligated to exonerate, indemnify and keep indemnified Philadelphia from and against any and all liability for losses and expenses of whatsoever kind or nature which Philadelphia may incur or sustain including, but not limited to, all losses and expenses incurred by reason of Philadelphia's furnishing of the Bonds and enforcement of the Indemnity Agreement.

47. Pursuant to the terms of the Indemnity Agreement, the Indemnitors are further jointly and severally obligated to deposit, upon demand, collateral equaling any and/or all of the following: (a) the face amount of any claim or demand that is asserted against Philadelphia under any Bond(s) plus Philadelphia's estimate of the costs and expenses Philadelphia may sustain and incur while paying, compromising, resisting, defending, trying or appealing the claim or demand (in Philadelphia's sole discretion); (b) sums posted by Philadelphia as a reserve for the payment of potential losses and/or expenses; (c) all costs and expenses incurred in connection with investigating, paying or litigating any claim, and/or enforcing the Indemnity Agreement, including but not limited to legal fees and expenses, professional and consulting fees, technical and expert

witness fees and expenses; (d) all accrued and unpaid premiums owing to Philadelphia for the issuance, continuation or renewal of any Bonds or for any policy of insurance issued by Philadelphia for the Principal or Indemnitors; (e) funds loaned or advanced by Philadelphia (at Philadelphia's sole discretion) to the Principal; and (f) all other amounts payable to Philadelphia according to the terms and conditions of the Indemnity Agreement or any other agreement between Philadelphia and Principal or Indemnitors.

48. To date, Philadelphia has incurred and continues to incur liability for losses, fees, costs, and expenses (including attorney's fees) as a result of or in connection with the furnishing of the Bonds, the assumption of obligations by Philadelphia of the Bonds, the enforcement of the Indemnity Agreement, and by reason of investigation.

49. Moreover, Philadelphia has demanded that the Indemnitors deposit collateral with Philadelphia and reimburse and indemnify Philadelphia in accordance with their obligations under the Indemnity Agreement.

50. The Indemnitors' failure to exonerate, hold harmless, indemnify and keep indemnified Philadelphia constitutes a material breach of the Indemnity Agreement.

51. Philadelphia has been damaged and continues to be damaged by the Indemnitors' breach of the Indemnity Agreement in an amount to be proven at trial.

52. Therefore, Philadelphia is entitled to the entry of judgment against the Indemnitors, jointly and severally, in an amount sufficient to fully exonerate, hold harmless, indemnify, and keep indemnified Philadelphia from and against any and all liability for losses, fees, costs, and expenses (including attorneys' fees) as a result of or in connection with the furnishing of the Bonds, the assumption of obligations by Philadelphia of the Bonds, the enforcement of the Indemnity Agreement, and by reason of investigation.

## COUNT II – SPECIFIC PERFORMANCE OF THE INDEMNITY AGREEMENT
### (Deposit of Collateral)

53. Philadelphia hereby restates the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

54. Pursuant to the Indemnity Agreement, the Indemnitors are obligated to deposit with Philadelphia, upon demand, deposit collateral equaling any and/or all of the following: (a) the face amount of any claim or demand that is asserted against Philadelphia under any Bond(s) plus Philadelphia's estimate of the costs and expenses Philadelphia may sustain and incur while paying, compromising, resisting, defending, trying or appealing the claim or demand (in Philadelphia's sole discretion); (b) sums posted by Philadelphia as a reserve for the payment of potential losses and/or expenses; (c) all costs and expenses incurred in connection with investigating, paying or litigating any claim, and/or enforcing the Indemnity Agreement, including but not limited to legal fees and expenses, professional and consulting fees, technical and expert witness fees and expenses; (d) all accrued and unpaid premiums owing to Philadelphia for the issuance, continuation or renewal of any Bonds or for any policy of insurance issued by Philadelphia for the Principal or Indemnitors; (e) funds loaned or advanced by Philadelphia (at Philadelphia's sole discretion) to the Principal; and (f) all other amounts payable to Philadelphia according to the terms and conditions of the Indemnity Agreement or any other agreement between Philadelphia and Principal or Indemnitors.

55. Despite demand by Philadelphia and the Indemnitors' contractual obligations to do so, the Indemnitors have failed and/or refused to deposit with Philadelphia collateral security pursuant to the Indemnity Agreement, thereby constituting a breach of the Indemnity Agreement.

56. By letter dated April 3, 2023, Philadelphia demanded that the Indemnitors immediately obtain the full and complete discharge of Philadelphia from any and all Bonds

currently in force issued by Philadelphia on behalf of the Principal or (ii) place Philadelphia in immediately available funds in the amount of $1,700,000.

57. To date, Philadelphia has posted a reserve for potential losses and expenses in the amount of $1,700,000.

58. The Indemnitors agreed that Philadelphia would suffer irreparable damage and would not have an adequate remedy at law if indemnitors fail to comply with the requirement to deposit collateral sufficient to discharge any loss or anticipated loss.

59. The failure of the Indemnitors to comply with the Indemnity Agreement has caused irreparable harm to Philadelphia.

60. The Indemnity Agreement provides that the Indemnitors are jointly and severally liable for all obligations of the Indemnitors.

61. Philadelphia is therefore entitled to the entry of an injunction/judgment compelling the Indemnitors to deposit collateral in the amount of $1,700,000 with Philadelphia as collateral security to cover loss and anticipated losses related to the Bonds, including related expenses and fees (though Philadelphia expressly reserves the right to demand additional collateral in the future).

### COUNT III – SPECIFIC PERFORMANCE OF THE INDEMNITY AGREEMENT
**(Discharge of Bonds)**

62. Pursuant to paragraph 11 of the Indemnity Agreement, the Indemnitors agreed that:

> **DISCHARGE OF SURETY** – Upon the request of the Surety, Principals and Indemnitors will procure the discharge of Surety from any Bond, and all liability arising there from, and provide evidence to Surety regarding same.

(Ex. A, ¶ 11).

63. Considering it appears Principal will not be able to complete one or more of the Bonded Projects, Philadelphia requests, pursuant to the Indemnity Agreement, that the Indemnitors procure the discharge of Philadelphia under the Bonds and all liability arising therefrom.

64. The failure of the Indemnitors to procure the discharge of Philadelphia under the Bonds will cause irreparable harm to Philadelphia.

65. Philadelphia is therefore entitled to the entry of an injunction/judgment compelling the Indemnitors to obtain a discharge of the Bonds and release of any liability Philadelphia may have thereunder.

## COUNT IV – DECLARATORY JUDGMENT
### (Indemnity Agreement)

66. Philadelphia hereby restates the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

67. There are actual and justiciable controversies between the parties regarding Philadelphia's rights and the Indemnitors' obligations under the Indemnity Agreement. A declaratory judgment issued by this Court will resolve outstanding issues between the parties and provide certainty regarding the parties' current and future obligations.

68. Under the Indemnity Agreement, the Indemnitors have a contractual obligation to exonerate Philadelphia from any and all loss incurred or sustained in connection with furnishing the Bonds.

69. As an extension of this obligation, the Indemnitors have a contractual obligation, upon written demand by Philadelphia, to deposit with Philadelphia, the amount of any reserve against loss which Philadelphia is required or deems it prudent to establish to discharge any loss or anticipated loss.

70. Philadelphia is therefore entitled to a declaration that the Indemnitors have a continuing obligation to exonerate Philadelphia from losses sustained and to deposit with Philadelphia, upon demand, an amount equal to the then-current reserves against loss that have been established by Philadelphia.

## ADDITIONAL CLAIMS

71. The issues and actions discussed above are ongoing and additional claims or amendments of the claims asserted herein may be necessary. Philadelphia reserves all rights and claims and the right to amend its pleadings as additional facts are discovered and/or arise and to conform to the proof developed in this case.

WHEREFORE, PREMISES CONSIDERED, Philadelphia prays for the following relief:

a) For the issuance of process requiring each of the Indemnitors to answer Philadelphia's Complaint;

b) For the entry of a temporary restraining order and/or an injunction compelling the Indemnitors, jointly and severally, to specifically perform their obligation to deposit collateral with Philadelphia in the amount of $1,700,000 as collateral security for the liability that has or may be asserted against Philadelphia by reason of having issued the Bonds and/or as collateral security for the Indemnitors' obligations to Philadelphia under the Indemnity Agreement;

c) For the entry of an order declaring that the Indemnitors, jointly and severally, have an obligation, upon written demand, to deposit with Philadelphia an amount equal to Philadelphia's then-current reserves against loss;

e) For the entry of judgment against the Indemnitors, jointly and severally, in an amount sufficient to fully exonerate, indemnify and reimburse Philadelphia for all current loss, anticipated loss, and any loss hereafter sustained including, without limitation, all attorneys' fees and related expenses and costs incurred in connection with its attempts to enforce the Indemnity Agreement;

f) For the entry of an order declaring that the Indemnitors, jointly and severally, have a continuing obligation to exonerate and indemnify Philadelphia from all losses sustained;

g) For an injunction ordering the Indemnitors to obtain a discharge of the Bonds and all of Philadelphia's liability thereunder;

k) For such further relief, both general and specific, as may be appropriate in accordance with the nature of this cause including, but not limited to, pre-judgment and post-judgment interest.

Respectfully submitted,

*/s/ Jeffrey S. Price*

Jeffrey S. Price, NC Bar No. 42590
MANIER & HEROD
1201 Demonbreun Street, Suite 900
Nashville, Tennessee 37203
Phone: (615) 244-0030
Fax: (615) 242-4203
PHJPrice@manierherod.com

*Attorney for Philadelphia Indemnity Insurance Company*